UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FLORENCE LINK and
RICHARD LINK,

       Plaintiffs,

v.

STATE OF MICHIGAN, et al.,

       Defendants.

Case No. 1:12-cv-52

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

       This is a civil rights action brought by two *pro se* plaintiffs under 42 U.S.C. §1983. The plaintiffs are Richard Link and his mother, Florence Link. This lawsuit arises from a series of state-court lawsuits involving plaintiffs, some dating as far back as 1980s, while others are of a more recent vintage. Recent proceedings in state court resulted in the January 16, 2012 eviction of plaintiffs from a Cadillac, Michigan residence. The defendants are:

    1.    State of Michigan;

    2.    Haring Township;

    3.    28th Circuit Court for Wexford and Missaukee Counties;

    4.    84th District Court for Wexford County;

    5.    84th District Judge David A. Hogg;

    6.    28th Circuit Court Family Division Judge Kenneth L. Tacoma;

    7.    Former Wexford County Prosecuting Attorney and Current 28th Circuit Court Chief Judge William M. Fagerman;

    8.    Attorney Anthony Badovinic;

9.  Wexford County Family Independence Agency; and

10. Wexford County Treasurer.

Plaintiffs seek damages and an injunction to help Florence Link "retain" the residence from which she was recently evicted. (Compl., 5). This court granted plaintiffs leave to proceed *in forma pauperis* in light of their indigence. (docket # 4). Upon review, I recommend that this lawsuit be dismissed for lack of subject-matter jurisdiction. Alternatively, I recommend that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2) because it seeks relief against defendants entitled to immunity and fails to state a claim upon which relief can be granted.

## **Applicable Standards**

Under the provisions of federal law, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the court is required to dismiss any action brought under federal law *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 2007). An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Accordingly, an action is frivolous within the meaning of section 1915(e)(2) when it is based on either an inarguable legal conclusion or fanciful factual allegations. 490 U.S. at 325.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While this notice pleading standard does not require

"detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *Id.* "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 50 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Generally, in determining whether the complaint states a claim, the court must construe the complaint in the light most favorable to plaintiffs, accept the plaintiffs' factual allegations as true, and draw all reasonable factual inferences in plaintiffs' favor. *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Claims survive only where the "factual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555.

The Supreme Court's *Iqbal* decision emphasized that a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a

sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557.

129 S. Ct. at 1949. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)) (internal citations omitted).

### **Plaintiffs' Allegations**

Richard Link and his mother Florence Link are the plaintiffs in this case. Richard Link is the complaint's author. Florence Link's signature appears on the last page of the pleading. (Compl. at 5). The complaint's allegations are not organized in a coherent fashion, but they are addressed herein in chronological order.

A.   1989

On January 18, 1989, Rose A. Sparks filed a complaint in 84th District Court for land contract forfeiture against Richard Link and Monica Colcord Link. The complaint indicated that the material breaches of the land contract had been the non-payment of monies required to be paid under the contract and Richard and Monica Link's breach of the zoning code "by putting a junk, burned out trailer onto the premises." (Ex. 6, ID# 17). Richard Link lost this lawsuit, and his summary of what happened is set forth verbatim below:

> In 84th District Court 1/18/89 Case No. 89-110 Land Contract. I fell behind on payments because of the courts, and I motioned for the district court for a jury trial and was denied, so I lost my land, and the money I had paid thus far and the woman I was buying it froms niece also got our child, and they (FIA Wexford) attacked my Veterans Benefits. So to put it another way, they got our land, our money, and our baby. (The child was part of another case)(Ex. 5).

(Compl., 3).

    B.    <u>1991</u>

Richard Link states that his mother did not receive an appropriate amount in her July 1991 divorce proceedings:

> In July 1991, my mother got a divorce, in which her now deceased ex-husband perjured himself and took the marital assets of around $377,000.00, my mother['s] share being half of that.

(Compl., 1; *see* Ex. 1, ID# 7).

    C.    <u>1995</u>

Richard Link states that the following events occurred in 1995:

> In May 1995 my mother's ex-husband & my siblings filed a quit-claim deed trying to get the house for back taxes, but my mother came up with loans and paid, so they couldn't get it. The names on the quit claim are some of the ones trying to take my mother[']s rights away at the present time.

(Compl., 1; *see* Ex. 2, ID# 9).

    D.    <u>1998</u>

In 1998, Richard Link had criminal charges pending against him in 84th District Court. Judge Hogg was the presiding judge and William Fagerman was the prosecuting attorney.[1]

---

[1] Prosecuting Attorney Fagerman is now Chief Judge Fagerman. (Compl., 2).

(Compl., 2-3). Mr. Link states that he spent "about ten months" in jail as a result of these proceedings. (*Id.* at 2).

There were also proceedings underway in 1998 in the Family Division of 28th Circuit Court to terminate Richard Link's parental rights with regard to a minor child. Judge Kenneth Tacoma was the presiding judge. (Compl., 3). Mr. Link states that in January 1998, his court-appointed attorney refused to ask for an adjournment of proceedings, so he dismissed the attorney. (*Id.*). Exhibit 5 is a one-page excerpt from a brief Mr. Link filed in an unspecified court expressing his disagreement with Judge Tacoma's handling of the hearing and the termination of his parental rights. (Ex. 5, ID# 15).

E.  2001

Mr. Link alleges that in December 2001, "Haring Township hired a couple of people to move some of our property, one item being 9 yds. of gravel." (Compl., 2). He alleges that these individuals pushed gravel into the grass and ruined it. He states that the township charged $2000, which he believes was too much for this cleanup. He alleges that the township's workers "ran off/stole my jeep pickup with a value between 3 & 5 thousand dollars." (*Id.*; *see* Ex. 4, ID# 13).

F.  2006

On September 7, 2006, Ms. Cathy Wright, the Victim Advocate in Wexford County Prosecuting Attorney William Fagerman's office, sent a letter to Richard Link indicating that a pretrial conference had been scheduled in 28th Circuit Court in the case of *People v. Zachary Ryan Stewart*, Case No. 2006001056. Ms. Wright notified Mr. Link that he would be subpoenaed if his attendance was required. If not subpoenaed, he remained free to attend the pretrial proceedings, if

he so desired. Richard Link believes that if "justice fund money" came out of this case, the county treasurer should have credited it against his mother's back taxes debt. (Compl., 2, *see* Ex. 3, ID# 11).

    G.    <u>2011 and 2012</u>

On February 18, 2011, in 28th Circuit Court, Florence Link "missed a meeting with Judge Fagerman which resulted in her losing her property because it gave her less time to pay more." (Compl., 1).

Richard Link "recently" had a hearing in 84th District Court because a "taillight lens was missing" on his vehicle. He states that he was fined "almost $200.00 which they reduced to less than $100," but he still considered the fine "excessive." (Compl., 3).

On September 14, 2011, Richard Link filed a petition seeking a personal protective order against Gerald J. Link. On September 14, 2011, Judge Hogg entered his order denying the petition. (*Richard Link v. Gerald Link*, No. 2011-23479-PH, Ex. 7, ID# 19).

Barry and Margaret Balcom purchased real estate in Cadillac, Michigan at a tax sale. Florence and Richard Link refused to vacate the property after it had been sold. (Ex. 10, ID# 32). On December 27, 2011, Judge Hogg conducted a hearing in the case of *Barry & Margaret Balcom v. Florence Eleanor Link*, No. 11-2020-LT. (Ex. 8, ID#s 21-25). The transcript reveals that this hearing had been adjourned at least once before to provide Florence Link with the opportunity to hire an attorney. She did not hire counsel. When Judge Hogg indicated that he would be proceeding with the hearing and asked Florence Link whether she wished to testify or present evidence, her response was to assert that she didn't feel well. (*Id.* at ID# 22). Richard Link then interjected something

about approximately 12,000 pounds of metal consisting of "[c]ars and stuff like that" being on the property and he asked for another adjournment. The court reminded Mr. Link that he was not a litigant in this case and ruled that there would be no adjournment. (*Id.* at ID#s 22-24). Judge Hogg stated that he would be entering a judgment requiring that the property be vacated by January 6, 2012, and that a copy of the court's judgment would be available "out [at] the counter." (*Id.* at ID# 23). The court's judgment indicated that an order of eviction would be entered on or after January 6, 2012. (Ex. 10, ID# 34). On or about January 6, 2012, Florence Link filed motions in 84th District Court requesting a "change of venue" (Ex. 9, ID# 28) and a new trial (Ex. 10, ID# 30). The order of eviction was served on January 10, 2012. (Ex. 10, ID# 33). Plaintiffs were evicted on January 16, 2012. (Compl., 5). On January 17, 2012, plaintiffs filed this lawsuit.

## Discussion

### I. Jurisdiction

Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011). Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted). The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also Baze*, 632 F.3d at

341. Plaintiffs have the burden of proving this court's jurisdiction. *See Giesse v. Secretary of Dep't of Health & Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

This court lacks jurisdiction to entertain plaintiffs' claims that they suffered injuries arising out of the decisions made by Michigan's courts. Under the *Rooker-Feldman Doctrine*, a party who lost in state court may not complain about injuries caused by state-court judgments in a subsequent federal lawsuit. *See Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This court does not possess direct oversight powers over Michigan's courts. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The recourse available to plaintiffs in response to an adverse decision of a state trial court is an appeal to the Michigan Court of Appeals,[2] an application for leave to appeal to the Michigan Supreme Court, and if necessary, a writ of *certiorari* from the United States Supreme Court.

This court lacks jurisdiction over plaintiffs' claims based on the termination of Richard Link's custody rights and Florence Link's divorce. For over a century and a half, the Supreme Court has held that the federal courts lack jurisdiction over questions of divorce, alimony, or child custody. *See Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858). "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981). "The whole subject of the domestic relations of husband and wife, parent and child,

---

[2]Labeling this lawsuit as an action for a "change of venue" or requesting "removal" cannot change the fundamental nature of plaintiffs' claims or manufacture subject-matter jurisdiction where it does not exist. *See e.g.*, *Foster v. KNTV Television, Inc.*, 444 F. App'x 132 (9th Cir. July 19, 2011); *Groves v. Wilson*, 404 F. App'x 705 (3d Cir. 2010); *Mangel v. City of Poteet, Texas*, No. SA-09-CV-401, 2009 WL 1884601 (W.D. Tex. June 1, 2009).

belongs to the laws of the states, and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890); *see Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005); *Partridge v. Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003) ("Federal courts have no jurisdiction to resolve domestic relations disputes involving child custody or divorce."); *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2004) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues."). The Supreme Court has consistently reaffirmed the longstanding doctrine that the federal courts lack power to issue divorce, alimony, and child-custody decrees. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703-07 (1992).

Consequently, this court is powerless to entertain claims arising from the decisions rendered by courts in previous litigation, namely: (1) the 1989 land contract forfeiture; (2) the 1991 divorce proceedings involving Florence Link; (3) the 1998 criminal proceedings against Richard Link; (4) the 1998 termination proceedings involving parental rights; (5) the 2011 proceedings involving Florence Link's property; (6) the 84th District Court civil infraction proceedings against Richard Link; (7) the 2011 personal protection order proceedings; and (8) the recent proceedings in 84th District Court for possession of property after a tax sale. The *Rooker-Feldman* doctrine deprives this court of jurisdiction to remedy any direct effect of the judgments entered in any of these proceedings. I recommend that plaintiffs' complaint be dismissed for lack of subject-matter jurisdiction to the extent that the complaint seeks relief from the consequences of state-court judgments.

## II.  Grounds for Dismissal of Remaining Claims

The remainder of plaintiffs' claims are subject to dismissal on a number of grounds.

### A.  Statute of Limitations

All plaintiffs' section 1983 claims against defendants based on events occurring before January 17, 2009, are barred by the statute of limitations. Claims under section 1983 are subject to a three-year statute of limitations. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) ("We have held that the applicable statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims.") (citing MICH. COMP. LAWS § 600.5805(10)); *see also Xu v. Michigan State Univ.*, 195 F. App'x 452, 455 (6th Cir. 2006); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Any claim accruing more than three years before the filing of this action is therefore barred.

### B.  Sovereign Immunity

Sovereign immunity bars all plaintiffs' claims against the State of Michigan, 28th Circuit Court, 84th District Court, and the Wexford Family Independence Agency. An action against the State of Michigan is barred by sovereign immunity, regardless of the type of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984); *Ernst v. Rising*, 427 F.3d 351, 365 (6th Cir. 2005) ("When a State is sued by name in a lawsuit, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought or not."). "In addition to the states themselves, the Eleventh Amendment immunizes departments and agencies of the states." *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, (6th Cir. 2003). The 28th Circuit and 84th District Courts are parts of Michigan's one court of justice, and as "arms of the State," the courts are entitled

to sovereign immunity. *See Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 760-64 (6th Cir. 2010). The Michigan Department of Human Services, formerly known as the Family Independence Agency,[3] is a department of Michigan government. MICH. COMP. LAWS § 400.1. The inclusion of the name of a county, as in "Wexford County Family Independence Agency"" simply identifies the local division of the State's department. *See Thomas v. Michigan Family Independence Agency*, 67 F. App'x 908 (6th Cir. 2003); *see also McGhan v. Kalkaska County Dep't of Human Servs.*, No. 1:08-cv-1113, 2009 WL 2170151, at * 11 (W.D. Mich. July 20, 2009). Eleventh Amendment immunity generally bars a suit in federal court against a State and its departments and agencies unless the State has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst*, 465 U.S. at 100. The State of Michigan has not waived its immunity or consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).

Plaintiffs' claims for damages against Judges Hogg, Tacoma, and Fagerman in their official capacities are barred as well because a suit against a state officer in his official capacity is simply another way of pleading an action against the State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).

### C. Judicial Immunity

State judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Alkire v. Irving*, 305 F.3d 456, 469 (6th Cir. 2002). A claim that the

---

[3]Executive Order 2005-6 changed the department's name, effective March 15, 2005.

state court judge acted "maliciously or corruptly" and in excess of his jurisdiction is insufficient to overcome judicial immunity. *See Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001).

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.... Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226-27, 108 S. Ct. 538, 98 L.Ed.2d 555 (1988).

*Stern v. Mascio*, 262 F.3d at 606.

The Supreme Court has made it clear that absolute judicial immunity is overcome "in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge is not immune for non-judicial actions, *i.e.*, actions not taken in a judicial capacity. *Id.* Second, a judge is not immune for actions, although judicial in nature, done in complete absence of all jurisdiction. *Id.* In determining whether certain conduct is judicial in nature, the court must adopt a functional approach, asking whether the act is one normally performed by a judge. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see Brookings v. Clunk*, 389 F.3d 614, 617-18 (6th Cir. 2004). All the challenged actions were judicial in nature. I find that Judges Hogg, Tacoma, and Fagerman are entitled to absolute judicial immunity.

D.    Prosecutorial Immunity

Richard Link seeks to hold Prosecuting Attorney Fagerman responsible for initiating the criminal actions against him. This claim is barred by the doctrine of prosecutorial immunity. Under the doctrine of prosecutorial immunity, prosecutors are immune from damage suits for their decision to initiate or maintain a criminal prosecution. *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *Holloway v. Brush*, 220 F.3d 767, 774-75 (6th Cir. 2000) (*en banc*); *accord Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (prosecutor entitled to absolute immunity for decisions to file public nuisance and civil forfeiture complaints). Consequently, defendant Fagerman is immune from suit for his role in initiating and prosecuting criminal charges against Richard Link.

E.    Wexford County Treasurer

Richard Link alleges that he is "almost sure" the treasurer received "justice fund money" out of the 2006 criminal prosecution of Zachary Stewart. He asserts such money should have been credited against his mother's property tax debt. This vague accusation fails to allege any viable claim against the county treasurer.

F.    Attorney Badovinic

Attorney Badovinic's name appears in the caption of the complaint, but there are no allegations against him in the body of the complaint. A *pro se* complaint that merely names a person as a defendant without alleging specific conduct by that individual is subject to summary dismissal as frivolous. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1994); *Cameron v. Howes*, No. 1:10-cv-539, 2010 WL 3885271, at * 6 (W.D. Mich. Sept. 28, 2010) (collecting cases).

      G.      Haring Township

Haring Township "cannot be held liable in [a] section 1983 action[] on a *respondeat superior* theory" for the actions of unspecified individuals conducting a 2001 clean-up. *Spears v. Ruth*, 589 F.3d 249, 256 n.6 (6th Cir. 2009); *see Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). Plaintiffs' complaint does not allege facts sufficient to establish a municipal policy or custom, much less establish "a direct causal link between the policy and the alleged constitutional violation." *Spears*, 589 F.3d at 256 (quoting *Graham ex rel. Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004)); *see Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

**Recommended Disposition**

For the reasons set forth herein, I recommend that (1) this lawsuit be dismissed for lack of subject-matter jurisdiction to the extent that it seeks relief arising from the judgments of state courts in cases to which plaintiffs were parties; (2) that all claims arising before January 17, 2009, be dismissed as time-barred; (3) that all remaining claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2) because they seek relief against defendants entitled to immunity or fail to state a claim upon which relief can be granted.

Dated: February 14, 2012      /s/ Joseph G. Scoville
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All

objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006)